394 S.E.2d 340

**Cherylann E. BRAMMER**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Tidewater Grill,**

**and**

**TIDEWATER GRILL**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Cherylann E. Brammer.**

Nos. 19434, 19437.

Supreme Court of Appeals of West Virginia.

May 31, 1990.

G. Nicholas Casey, Jr., Michael J. Del Giudice, and Claude S. Smith, III, Lewis, Ciccarello & Friedberg, Charleston, for Tidewater Grill.

Dan L. Hardway, Charleston, for Cherylann E. Brammer.

**PER CURIAM:**

Pursuant to *W. Va. Code*, 5–11–11(a) [1987, 1989], both the complainant, Cherylann E. Brammer, and the former employer, Tidewater Grill ("the employer"), have filed these two direct appeals to this Court for review of the final order of the West Virginia Human Rights Commission ("the Commission"). The complainant is aggrieved by the Commission's reduction of the back-pay and incidental-damage awards recommended by the hearing examiner. The employer is aggrieved by the Commission's finding of liability. We believe that there is substantial evidence on the whole record to support the findings of the Commission, and, accordingly, we affirm in both appeals.

I

The complainant was hired as a food server at the employer's restaurant, in August, 1985. She subsequently was promoted to the position of assistant manager in charge of the employer's dining room operations. The complainant was not informed by her supervisors of any significant, ongoing problems with her job performance.

During her employment with the employer, the complainant witnessed improper sexual advances over several months by two male assistant managers (a Mr. Lusk and a Mr. Thompson) towards other female employees. The complainant herself was also a victim of improper sexual advances by the employer's management personnel. As a result of the complainant's report to her immediate supervisor, whose title was general manager, the employer discharged an assistant manager (Mr. Lusk), in August, 1986, for sexual harassment. Immediately thereafter, the general manager recommended to his supervisor, the vice-president of operations, that the complainant be discharged because she "did not get along with" the two male assistant managers who had been sexually harassing employees at the employer's restaurant. The complainant was not, however, discharged at that time.

Subsequently, in November, 1986, the complainant reported to the general manager that the second male assistant manager who had been sexually harassing several of the female employees (Mr. Thompson) was continuing to harass a particular food server. Unlike in August, 1986, the general manager did not inform the vice-president of operations about this sexual harassment.[1] Instead, the vice-president of operations learned of this sexual harassment from the victim thereof and from another employee, a boyfriend of another food server who also had been sexually harassed by Mr. Thompson. These two persons informed the vice-president of operations about the sexual harassment upon the encouragement of the complainant, after they had asked her advice on how to end the sexual harassment.

One of the food servers who had been sexually harassed, and not the complainant, had discussed the sexual harassment with the employees in general.

After investigating the matter the employer's vice-president of operations discharged three of the managerial personnel: (1) the male general manager, on January 5, 1987, for, primarily, his failure to handle the sexual harassment matter; (2) the male assistant manager (Mr. Thompson), on January 6, 1987, for the sexual harassment by him; and (3) the complainant, on January 7, 1987, for "spreading rumors" about the sexual harassment.

The complainant later timely filed a complaint with the West Virginia Human Rights Commission, alleging that she had been unlawfully discharged in retaliation for her efforts at ending the sexual harassment, in violation of *W.Va.Code*, 5–11–9(i)(3) [1981].[2] The Commission's hearing examiner found the employer liable as alleged and awarded, among other things, back pay in the amount of $31,231.94 and "incidental" damages for humiliation, etc., in the amount of $15,000.00.

The Commission affirmed the hearing examiner's recommended decision as modified. Without explanation, the Commission reduced the back-pay award to $14,800.00 and the incidental-damage award to $2,500.00. The complainant had been paid by the employer at the rate of $280.00 per week immediately prior to her discharge (with expected raises of $15.00 per week every four months), and had been discharged about one year and eight months at the time of the hearing examiner's decision and about two years and nine months at the time of the Commission's decision.

The complainant argues before this Court that the Commission erred in reducing the amount of monetary relief. The employer has also appealed, arguing that liability is not supported by the evidence.

## II

■ Addressing first the liability issue, we conclude that the guiding principles are set forth in syllabus point 4 of *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986):

> In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.*, as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such

---

1. The complainant did not learn of this inaction of the general manager until January 5, 1987.

2. *W.Va.Code*, 5–11–9(i)(3) [1981] provides, in relevant part, that it is an unlawful discriminatory practice for any person to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he [or she] has opposed any practices or acts forbidden under this article[.]" The 1989 amendment to section 9 redesignated this provision as *W.Va.Code*, 5–11–9(a)(9)(C), without any substantive change.

period of time that the court can infer retaliatory motivation.

The hearing examiner found that the complainant was unlawfully discharged "as a result of her efforts to abate the continuing improper sexual advances being made by certain managers of the" employer.[3] The hearing examiner also found that the employer's articulated reasons to support the complainant's discharge, namely, "spreading rumors," generalized managerial incompetency, etc., were pretextual for the unlawful retaliatory discharge. The Commission adopted these findings.

▆▆▆ The record contains conflicting evidence on the employer's motivation for discharging the complainant. These conflicts were resolved by the fact finder in favor of the complainant. We recently discussed in some detail the scope of judicial review of factual findings in human rights cases. In *West Virginia Institute of Technology v. West Virginia Human Rights Commission,* 181 W.Va. 525, 532–533, 383 S.E.2d 490, 497–98 (1989), we said:

> In syllabus point 1 of *West Virginia Human Rights Commission v. United Transportation Union, Local 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981), *questioned on another point, Independent Fire Co. No. 1 v. West Virginia Human Rights Commission,* 180 W.Va. 406, 409, 376 S.E.2d 612, 615 (1988), this Court set forth the scope of judicial review in cases under the West Virginia Human Rights Act: 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' 'Substantial evidence' is such relevant evidence, on the whole record, as a reasonable mind might accept as adequate to support a finding; it must be enough to justify a refusal to direct a verdict, if the factual matter were tried to a jury. 'This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' The reviewing court is not entitled to reverse the finding of the trier of the facts simply because the reviewing court is convinced that it would have weighed the evidence differently if it had been the trier of the facts.

(internal citations omitted) Applying this scope of review in the present case, we believe the finding of a retaliatory discharge or reprisal is supported by substantial evidence on the whole record.

▆▆▆ Turning to the issue of damages, this Court observes first that the Commission properly limited the award of so-called "incidental" damages, for humiliation, emotional and mental distress and loss of personal dignity, to $2,500.00, in accordance with *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989). *See* syl. pt. 2 thereof and 181 W.Va. at 80, 380 S.E.2d at 247.

▆▆▆ With respect to the Commission's reduction of the award of back pay, the controlling principle is stated in syllabus point 2 of *State ex rel. Staley v. County Court,* 137 W.Va. 431, 73 S.E.2d 827 (1952): "In the absence of evidence to the contrary public officers will be presumed to have properly performed their duties and not to have acted illegally, but regularly and in a lawful manner." *Accord,* syl., *Perry v. Miller,* 181 W.Va. 192, 382 S.E.2d 29 (1989). *Staley* also states: " 'As a general rule, the

---

3. In note 3 of *Westmoreland Coal Co. v. West Virginia Human Rights Commission,* 181 W.Va. 368, 371, 382 S.E.2d 562, 565 (1989), this Court identified the type of sexual harassment which the complainant here had sought to eliminate, specifically, sexual harassment involving an employee who is consistently subjected to sexual innuendo or contact, thereby creating a hostile environment for employment.

decisions or orders of an administrative body are, *in the absence of evidence to the contrary, presumptively correct and valid'."* 137 W.Va. at 436, 73 S.E.2d at 831 (internal citation omitted). The record in the case now before us does not indicate the precise manner in which the Commission, the hearing examiner or the complainant calculated the amount of back pay. We therefore cannot hold that there is error.[4]

For the reasons stated above, the Commission's order as to liability and damages is affirmed.

Affirmed.

---

**4.** This Court also cannot hold on this record that the Commission abused its discretion by not ordering the complainant's reinstatement to employment with the Tidewater Grill.