403 S.E.2d 729

**FMC CORPORATION**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Teresa A. Frymier.**

**No. 19555.**

Supreme Court of Appeals of West Virginia.

March 15, 1991.

Rehearing Denied April 25, 1991.

James F. Wallington, Charleston, for Teresa A. Frymier.

Larry Blalock, Albert Sebok, Jackson & Kelly, Charleston, for FMC Corp.

NEELY, Justice:

Teresa Frymier (Ms. Frymier) appeals a 28 March 1989 decision of the Circuit Court of Kanawha County reversing a 9 December 1985 Human Rights Commission decision in favor of Ms. Frymier and against FMC Corporation. The Human Rights Commission had found that FMC discharged Ms. Frymier because she filed sex discrimination charges.

On 10 November 1975, Ms. Frymier went to work at FMC in South Charleston. After working for two years as an operator in the Carbon Dioxide Unit, she exercised her "bidding" rights under a collective bargaining agreement to obtain a janitorial position. Ms. Frymier's tenure at FMC was relatively uneventful until March of 1983 when she was moved from the evening shift to the day shift. In the wake of the shift change, Ms. Frymier complained a great deal, filing grievances regarding the change and FMC's alleged refusal to process her written grievances. Ms. Frymier claimed that the shift change as well as other changes that followed the shift change constituted sex discrimination, and that FMC's alleged refusal to process her grievances was also sex discrimination.

On 26 April 1983, Ms. Frymier was discovered out of her work area making unauthorized use of company property. Specifically, she was typing on a company typewriter. A male co-worker, also out of his work area, sat in the same room and drank a soda. Ms. Frymier admitted to the Human Rights Commission hearing examiner that she was out of her work area, but claimed that she was on union business. The man in the room with her testified, however, that Ms. Frymier was working on personal business, and, further, that when Ms. Frymier's supervisor entered the room and wanted to know whether Ms. Frymier had FMC documents in her briefcase, Ms. Frymier responded that it was none of his business, and threatened him with "big trouble" if he pursued the matter.

It appears from the record that the man in the room with Ms. Frymier received a less severe form of discipline than Ms. Frymier received. However, we believe that the circuit court could reasonably have concluded that making unauthorized use of company equipment while out of one's work area and threatening one's supervisor when discovered merits greater discipline than merely being out of one's work area, and drinking a soda.

On 8 August 1983, Ms. Frymier reported to work and was assigned to help Mr. O'Daniel on the floor crew. Ms. Frymier allegedly could not find Mr. O'Daniel for over four hours, and after receiving a call from Mr. O'Daniel, a supervisor found Ms. Frymier in an office using a telephone for personal business. Ms. Frymier admitted to the hearing examiner that she made no attempt during the four hours to contact supervisory personnel to find Mr. O'Daniel. For her conduct on this occasion, Ms. Frymier was suspended for three days.

On 16 August 1983, Ms. Frymier docketed a charge of sex discrimination against FMC. From this time until she was fired nearly one year later, Ms. Frymier received only the mildest form of discipline, in the form of "reminders" about work performance and attendance, one of which was retracted.

On 26 June 1984, Ms. Frymier left FMC's premises without permission at about 5:50 P.M. and drove her own car to a house on Ninth Avenue in South Charleston, only a stone's throw from the FMC east plant. Before leaving FMC premises, Ms. Frymier had neither "clocked out", nor had she performed the janitorial services that were her responsibility. Over two hours later, at 8:00 P.M., Ms. Frymier left the house and returned to FMC. When confronted in the parking lot by FMC's industrial relations manager David Dick, Ms. Frymier lied and said that she had gone to Kentucky Fried Chicken for dinner, and had not been gone for more than half an hour to forty-five minutes.

Mr. Dick then told Ms. Frymier that he and another person had followed her when she left the plant; that she was gone for over two hours; and that she was not seen going to Kentucky Fried Chicken. Mr. Dick then indicated to Ms. Frymier that she was probably going to be in trouble, and

that she might want a union steward there because there could be discipline involved.

At a fact-finding conference later that evening, with her union steward present, Ms. Frymier asserted that she had gone to Kentucky Fried Chicken for dinner; that she had been gone for no longer than forty-five minutes; that she did not go into a house on 9th Avenue; and that she had performed janitorial duties before leaving FMC's premises. Unfortunately for Ms. Frymier, she had been followed when she left the plant, because FMC had received an anonymous tip. Therefore, because of the surveillance, FMC knew that Ms. Frymier was testifying to events that had not transpired.

Because of her conduct on the evening of 26 June 1984, and in light of her disciplinary record, Ms. Frymier was discharged by FMC on 2 July 1984. It was stipulated before the HRC hearing examiner that Ms. Frymier would have been laid off on 16 September 1985. Thus, Ms. Frymier claimed back pay and estimated overtime for the period from 2 July 1984 to 16 September 1985.

Ms. Frymier claims that other people who engaged in similar "out of plant without permission" incidents were punished less severely. The Human Rights Commission found that Ms. Frymier made out a prima facie case of discrimination based on disparate treatment,[1] and that the employer failed to meet its burden of establishing a nondiscriminatory basis for firing Ms. Frymier. The Commission found that, although Ms. Frymier had engaged in conduct justifying discipline, she did not deserve to be fired. The Commission decided that if Ms. Frymier had not filed complaints and grievances alleging discrimination by FMC, she would have received a 30 day suspension and that such a punishment would be justified by the record.

## I

▆ FMC appealed the Commission's decision to the Circuit Court of Kanawha County. In Syl. Pt. 2, *Shepherdstown V.F.D. v. W. Va. Human Rights Com'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983), we set out the standards for judicial review in circuit court of cases under the Administrative Procedures Act:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative or substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Thus, the standard of review is the "clearly wrong" or "abuse of discretion" standard. The circuit court found the Commission's decision to be "clearly wrong" and we affirm.

## II

▆ Filing complaints of sex or race discrimination clearly is protected activity. If Ms. Frymier had been fired because of her complaints, she would be entitled to relief. However, the circuit court found, and we agree, that management had a legitimate, nondiscriminatory reason to fire Ms. Frymier—she lied.

Ms. Frymier's claim that she was disciplined more severely than other employees who had engaged in "out of plant without permission" behavior, at least with regard to the 16 June 1984 incident, is particularly

---

**1.** With regard to her firing, Ms. Frymier's allegation of "disparate treatment" is essentially a claim of retaliatory discharge.

weak, because her conduct differed from the other absent employees' conduct in one important regard. When confronted about her conduct, she responded with a bold-faced lie, and stuck to it even when she should have realized she was caught in the lie. When other employees who were absent without authorization were confronted, they admitted what they had done.[2] Even the Human Rights Commission, which found for Ms. Frymier below, noted that:

> Ms. Frymier's lying when confronted with her actions on June 26, 1984, will justify a more severe discipline than meeted [sic] out to other employees for similar offenses.

(Commission Decision and Order, P. 7., Rec. p. 15.) Nevertheless, the Commission went on to say, "[h]owever, lying to an employer under this set of circumstances does not justify discharge." *Id.* We disagree. Lying to an employer about a work-related matter, under any circumstances, but particularly in such a boldfaced manner, is the kind of breach of trust that makes an employee completely without value to an employer. The circuit court held the Commission's finding that the firing was not justified to be "clearly in error and abuse of discretionary authority of the Human Rights Commission." The court said, "Ms. Frymier was fired because she lied to management, and because the culmination of her prior employment history progressively supported a discharge upon violation of the company's rules on the evening in question. The West Virginia Human Rights Act does not limit an employer in this instance." (Cir.Ct. Final Order (Rec. p. 52)). We agree.

### III

■ The Human Rights Commission has broad remedial powers under *W.Va. Code*, 5–11–10 [1987], but it has no authority to moderate the disciplinary action taken by an employer regarding an errant employee. If an employer fires an employee for a legitimate, non-discriminatory reason,

the Commission cannot reduce the discharge to a 30–day suspension simply because the Commission perceives some showing of disparate treatment. Likewise, if the employer lacked a legitimate reason for the firing, the Human Rights Commission cannot impose punishment on the employee after finding that she was fired illegally.

### IV

■ Ms. Frymier contended in the circuit court that she would need a remand to present evidence to rebut the employer's evidence. The circuit court stated:

> Regarding necessity for remand as asserted by Ms. Frymier in her cross-appeal, the Court disagrees with the contention that full and fair opportunity to proffer rebuttal evidence was not met in this case and deems remand unnecessary here. Albeit, Ms. Frymier's counsel began the evidentiary hearing(s) by stating his intent to only put on evidence relating to the *prima facie* case; this intent was, however, contradicted both in opening and closing remarks of counsel and in the *4 days of hearing and approximately 650 pages of testimony* taken at hearing. Clearly all that could have been offered in this case was, in fact, said during evidentiary hearing before the Commission, and any material evidence which could possibly be submitted on remand would certainly only tend to constitute cumulative evidence of testimony already on record with respect to rebuttal of the employer's "non-discriminatory" rationale for discharge. [Emphasis added.]

(Cir.Ct. Final Order, Rec., p. 52–3.) We agree that any evidence taken on remand would be cumulative, and would, in any case, be unlikely to show that Ms. Frymier's lying was not a legitimate, nondiscriminatory justification for her firing.

### V

■ Ms. Frymier sought in the circuit court to amend her pleadings to state a

---

**2.** FMC asserts that the disciplinary records of the other errant employees were better than Ms. Frymier's. That may be so, but we find that Ms. Frymier's boldfaced lying, in itself, made her conduct far more serious than that of the other employees.

cause of action for damages. The circuit court correctly held that such an amendment would be improper because the action was before it pursuant to the Administrative Procedures Act, *W.Va.Code*, 29A–5–1 [1964], *et seq.*, and not as a civil matter. (Cir.Ct. Order (Rec., p. 47)). As the circuit court said, "Clearly, Ms. Frymier cannot transform this appellate proceeding into an action at law for damages simply by seeking to amend her petition for review." *Id.*

The general rule is that one must exhaust her administrative remedies before going into a court of law or equity to enforce a right created by statute. However, because the administrative process created by the Human Rights Act has fallen far short of achieving the purposes of the Act, we have allowed claimants under the Human Rights Act to proceed in circuit court as an alternative to initiating an administrative action. In Syl. Pt. 1, *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985), we said:

> A plaintiff may, as an *alternative* to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act. [Emphasis added.]

Thus, Ms. Frymier could have elected to file a civil action in circuit court, but chose instead to avail herself of the services of the Human Rights Commission. In *Price*, we noted that, "[t]hese two avenues are, of course, mutually exclusive, as § 5–11–13(a) makes clear." 175 W.Va. at 679, 337 S.E.2d at 916. Ms. Frymier chose one avenue of redress; she cannot now pursue the other.

Accordingly, for the reasons stated above, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

MILLER, C.J., and McHUGH, J., concur in part and dissent in part and reserve the right to file concurring and dissenting opinions.

1. *W.Va.Code*, 5–11–1 to 5–11–19, as amended.

McHUGH, Justice, dissenting in part and concurring in part:

I dissent in part and concur in part. The brevity of the majority opinion belies the importance of this case. The primary holding of the majority opinion leads me to wonder whether the majority and I have read the same record.

In this appeal by the complainant under the West Virginia Human Rights Act,[1] from a final order of the Circuit Court of Kanawha County reversing a finding by the West Virginia Human Rights Commission of a retaliatory discharge proscribed by that Act, the primary issue presented is whether the circuit court applied the proper scope of judicial review of the Commission's findings of fact. Another issue is whether the West Virginia Human Rights Commission has the authority to impose its own form or measure of discipline upon a complainant who was a victim of unlawful discrimination but whose conduct merited some discipline. The final issue is whether a complainant under the West Virginia Human Rights Act may supplement the relief provided by the West Virginia Human Rights Commission with relief in the form of more-than-incidental emotional damages by bringing a subsequent action (or cross-appealing) in circuit court.

I believe there is substantial evidence supporting the Commission's findings of fact and, therefore, I would reverse the part of the circuit court's final order with respect to whether there was a retaliatory discharge. I also believe, though, that the Commission lacked the authority to impose a thirty-day suspension without pay and, therefore, I would set aside that part of the Commission's final order. Finally, I would, like the majority, affirm the part of the circuit court's final order refusing to allow the complainant to cross-appeal to the circuit court for more-than-incidental emotional damages.

I

Because the circuit court reversed the Commission's factual finding of a dis-

charge in retaliation for the filing of grievances and a human rights complaint on alleged sex discrimination, the evidence must be discussed in some detail.

The complainant, Teresa A. Frymier, was employed as a janitor by the employer, FMC Corporation. She commenced her employment with the employer in 1975 and was discharged on July 2, 1984. Starting in March, 1983, she lodged a series of verbal complaints and written grievances concerning alleged sex discrimination in job assignments. Her foreman and the janitor supervisor were aware of, and angered by, these grievances. A formal complaint alleging sex discrimination was filed on August 16, 1983, with the West Virginia Human Rights Commission.[2]

In April, 1983, the complainant for the first time received discipline from the employer in the form of a so-called "final notice" warning for an incident involving: (1) being out of her work area without permission, (2) the unauthorized use of company equipment (a typewriter) and (3) the unauthorized possession of company property (a brief case). On or about August 8, 1983, the complainant was disciplined a second time, this time in the form of a three-day suspension without pay for being out of her work area without permission for four and one-half hours. Between August 8, 1983 and her discharge on July 2, 1984, the complainant received two "reminders" about attendance and work performance.

The incident precipitating the complainant's discharge was the complainant's leaving the employer's place of business on June 26, 1984, during her shift, without permission, for about two hours and ten minutes. Without her knowledge, when the complainant exited the employer's place of business, two of the employer's managerial personnel observed her leave as part of a surveillance of her. The managers had received an anonymous "tip" that the complainant likely would be leaving the employer's place of business that evening, without permission. The hearing examiner found, and substantial evidence supports the finding, that the surveillance of the complainant was precipitated in part by previous relations between the complainant and the employer involving her filing grievances and the human rights complaint on alleged sex discrimination.

The surveillance of the complainant on June 26, 1984, incidentally disclosed other employees leaving the employer's place of business without permission. Five other employees received discipline (five-day suspensions without pay for salaried, supervisory personnel and three-day suspensions without pay for hourly employees like the complainant), but only the complainant was discharged. None of these other employees had filed grievances or a human rights complaint on alleged unlawful discrimination.

When confronted with her conduct on June 26, 1984, the complainant lied about how long she had been gone from the employer's place of business and where she had been. However, one of the employer's salaried, supervisory employees also lied when confronted about his subordinate, another hourly employee, who had been out of the employer's place of business without permission on the same evening as the complainant, but that supervisory employee was not discharged (he received a five-day suspension without pay).

Subsequent to her discharge the complainant timely filed the complaint in question with the West Virginia Human Rights Commission, alleging that the employer had discharged her in retaliation for her having filed grievances and a previous human rights complaint on alleged sex discrimination. After an evidentiary hearing a hearing examiner for the Commission found that the complainant had made a prima facie case of unlawful discrimination (retaliatory discharge, as shown by disparate disciplinary treatment) and found that the nondiscriminatory reason articulated by the employer for the discharge (the complainant's allegedly poorer disciplinary history) was pretextual for the proscribed re-

**2.** The merits of that sex discrimination complaint are not an issue in this appeal.

taliatory discharge. The Commission adopted these findings.

The employer appealed to the Circuit Court of Kanawha County. The circuit court reversed. The circuit court found no disparate disciplinary treatment, in light of the fact that the complainant had lied and in light of some evidence indicating that the complainant had a poorer disciplinary history than the other employees who were also caught outside the employer's place of business without permission the same evening.

The complainant has prosecuted this appeal.

## II

*W.Va.Code,* 5–11–9(i)(3) [1981], effective at the relevant time in this case, provided that it shall be an unlawful discriminatory practice for any person to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he [or she] has opposed any practices or acts forbidden under this article or because he [or she] has filed a complaint, testified or assisted in any proceeding under this article[.]"[3] In syllabus point 4 of *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986), this Court set forth the requirements to prove an unlawful reprisal or retaliatory discharge under this statute:

> In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, *W.Va.Code,* 5–11–1, *et seq.,* as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

*Accord,* syl. pt. 1, *Brammer v. West Virginia Human Rights Commission,* 183 W.Va. 108, 394 S.E.2d 340 (1990).

One of the ways of showing a retaliatory motivation is by presenting evidence of disparate treatment, that is, evidence that the employer disciplined the complainant, a member of a group protected by the West Virginia Human Rights Act (such as those who actively oppose unlawful discrimination), and the complainant was disciplined in a more severe manner than a nonmember of a statutorily protected group. Unlawful disparate treatment is established when, without a legitimate, nondiscriminatory reason, "a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct." Syl. pt. 2, in part, *State ex rel. State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985).

As was held in syllabus point 5 of the *Logan–Mingo Area* opinion:

> A determination, by the West Virginia Human Rights Commission, that an employer has accorded disparate treatment ... is a finding of fact which may not be reversed by a circuit court upon review, unless such finding is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

This holding is a specific application of the broader holding set forth in syllabus point 2 of *Brammer v. West Virginia Human Rights Commission,* 183 W.Va. 108, 394 S.E.2d 340 (1990):

> 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981), *questioned on another point, Independent Fire Co. No. 1 v. West Virginia Human Rights Commission,* [180] W.Va. [406], [409], 376 S.E.2d 612, 615 (1988).

---

**3.** The identically worded current version of this statute is *W.Va.Code,* 5–11–9(a)(9)(C) [1989].

*Accord,* syl. pt. 2, *Bloss & Dillard, Inc. v. West Virginia Human Rights Commission,* 183 W.Va. 702, 398 S.E.2d 528 (1990).

This Court, in *West Virginia Institute of Technology v. West Virginia Human Rights Commission,* 181 W.Va. 525, 383 S.E.2d 490 (1989), explained the concept of "substantial evidence" for purposes of judicial review of an administrative agency's findings of fact. Substantial evidence is such relevant evidence, on the whole record, as a reasonable mind might accept as adequate to support a finding; it must be enough to justify a refusal to direct a verdict, if the factual matter were tried to a jury. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. The reviewing court is not entitled to reverse the finding of the trier of the facts simply because the reviewing court is convinced that it would have weighed the evidence differently if it had been the trier of the facts. *Id.* 181 W.Va. at 532–33, 383 S.E.2d at 497–98. *Accord, Brammer,* 183 W.Va. at 111, 394 S.E.2d at 343.

The circuit court in the present case did not believe there was unlawful disparate treatment. The circuit court emphasized (1) that the complainant lied when confronted and (2) that the complainant had a poorer disciplinary history than the other employees who had left the employer's place of business without permission. Neither of these points is well taken. As stated previously, at least one other employee, a supervisor, lied when confronted, and that employee received a five-day suspension, unlike the complainant, who was discharged. With respect to the comparison of prior discipline, the circuit court and the majority of this Court have overlooked the hearing examiner's and the Commission's express finding that the employer treated the same offenses which were included in the complainant's prior disciplinary record, as either minor offenses or none at all when committed by other employees. In addition, the hearing examiner and the Commission found that at least one other employee had a comparable disciplinary history ("a spotty record," to use management's language), and that employee received only a three-day suspension for leaving the employer's place of business without permission. Substantial evidence supports these findings of fact. Finally, it is significant that all of the complainant's discipline prior to her discharge came shortly after she commenced filing grievances concerning alleged sex discrimination, grievances which admittedly angered her supervisors.

In short, as in the typical retaliatory discharge case, there was conflicting evidence in this case as to the employer's motivation for discharging the complainant. The fact finder resolved the conflict in favor of the complainant, and substantial evidence supports the fact finder. The circuit court improperly substituted its own finding on motivation for the discharge. The majority has condoned this clearly improper scope of judicial review. I must assume that this curious holding is explained by the majority's disdain for this particular complainant's contentiousness, rather than by disagreement with this Court's precedents on the scope of judicial review in human rights cases, none of which are overruled by the majority in this case.

### III

The hearing examiner and the Commission decided that the complainant's lying, when confronted with her actions on June 26, 1984, justified more severe discipline than meted out to other employees for similar offenses, even though such lying did not justify her discharge. Accordingly, the hearing examiner and the Commission imposed upon the complainant a thirty-day suspension without pay, rather than a three-day suspension without pay that similarly situated, hourly employees received. I believe that the Commission acted outside its authority in imposing its own measure of discipline.

*W.Va.Code,* 5–11–10 [1971, 1987] provides for the administrative procedures before the West Virginia Human Rights Commission after the filing of a complaint with

the Commission. These procedures include (1) an investigation, (2) attempts at elimination of an apparent unlawful discriminatory practice by conference, conciliation and persuasion, (3) an evidentiary hearing and (4) a post-hearing determination, including any appropriate cease and desist order and any appropriate affirmative *relief* to the *complainant.*

While the Commission, as part of its conciliatory powers, would have the authority to *persuade* the complainant and the respondent to reach an *agreement* as to the form or measure of discipline, the Commission lacks the authority to *impose* its own form or measure of discipline. Although *W.Va.Code,* 5–11–15 [1967] provides that the West Virginia Human Rights Act "shall be liberally construed to accomplish its objectives and purposes [,]" those objectives and purposes, such as providing for "equal opportunity for employment," *W.Va.Code,* 5–11–2 [1981, 1989], would not be furthered by allowing the Commission to substitute its own disciplinary measures when a complainant is found to have been the victim of unlawful disparate disciplinary treatment, but whose conduct merited some discipline. In this situation the West Virginia Human Rights Commission is empowered to eliminate the *disparate* treatment, for the West Virginia Human Rights Act addresses unlawful *discrimination,* not employee discipline *per se.*[4]

This situation is analogous to the situation in which unlawful discrimination is not proved, but the discipline seems harsh to a reviewing court. Under those circumstances it has been held that absent discrimination, and assuming no contractual limitations, the choice of discipline is a matter left to the employer's best business judgment in light of all considerations.

*Sullivan v. Boorstin,* 484 F.Supp. 836, 842–43 (D.D.C.1980). *See also Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

A case which is similar to the present case is *Mosley v. General Motors Corp.,* 497 F.Supp. 583 (E.D.Mo.1980), *affirmed and remanded,* 691 F.2d 504 (8th Cir.1982). In that case, involving a federal antidiscrimination statute, the court found a retaliatory discharge and limited the discipline of the complainants to the discipline received by similarly situated nonmembers of the statutorily protected group. 497 F.Supp. at 590–91. The same approach should have been taken here. That is, the Commission should have eliminated the unlawful disparate disciplinary treatment by reducing the measure of discipline from a discharge to a three-day suspension without pay, the measure of discipline the employer chose for the most similarly situated other hourly employees.

### IV

Upon appeal by the employer to the circuit court the complainant cross-appealed to obtain more-than-incidental emotional damages which she allegedly had sustained as a result of the discharge. To protect the defendant-employer's constitutional right to a trial by jury on the issue of such damages, this Court, in syllabus point 2 of *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989), held that the West Virginia Human Rights Commission did not have the jurisdiction to award such damages and that, instead, a jury trial in a circuit court action would be necessary. The complainant argues in essence that she may bifurcate the proceedings: first, seek all appropriate relief from the Commission and second, if unlawful discrimination is

---

**4.** In contrast, the former state civil service commission was expressly granted the power to modify the discipline meted out to a state government employee covered under the civil service system: "If the commission finds that the action complained of and taken by the appointing authority was too severe but was with good cause, the commission may provide for such other remedy or remedies, as may be deemed appropriate and in the best interest of the parties." *W.Va.Code,* 29–6–15 [1977] (prior to its repeal in 1989 and replacement by the grievance procedure for state employees, *see W.Va.Code,* 29–6A–11 [1988] ). *See also* syl., *Blake v. Civil Service Commission,* 172 W.Va. 711, 310 S.E.2d 472 (1983) (petty theft by state hospital employees of clothing donated for patients is worthy of discipline, specifically, a ten-day suspension without pay, but does not constitute good cause for dismissal of long-term civil service tenured employees with unblemished work records).

proved before the Commission, seek in circuit court those damages recoverable only in a civil action. I disagree, based upon statutory and case law to the contrary.

*W. Va. Code,* 5–11–13(a) [1983] provides that as to acts declared unlawful by *W. Va. Code,* 5–11–9, as amended, "the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned." *Bishop Coal Co. v. Salyers* also indicates that the administrative and circuit court avenues are mutually exclusive. 181 W.Va. at 80, 380 S.E.2d at 247. Finally, this Court has explicitly concluded that the Commission and circuit court routes are alternative, not supplementary, avenues for relief: "[T]hose aggrieved by human rights violations [have] the option to proceed in circuit court, as an alternative to initiating administrative action. These two avenues are, of course, mutually exclusive, as § 5–11–13(a) makes clear." *Price v. Boone County Ambulance Authority,* 175 W.Va. 676, 679, 337 S.E.2d 913, 916 (1985) (internal footnote omitted). *See also* syl. pt. 1, *Price.*

The circuit court refused to allow the complainant to cross-appeal in order to recover more-than-incidental emotional damages. The circuit court's rationale was the same as that expressed in syllabus point 4 of the majority opinion: "An administrative proceeding on appeal in circuit court cannot be transformed into an action at law for damages." While this may be true, I would affirm the circuit court's ruling on this point on the more fundamental basis that the administrative and circuit court routes are mutually exclusive.

## V

For the reasons stated previously I would reverse the part of the circuit court's final order with respect to whether there was a retaliatory discharge, thereby affirming the Commission's finding on the same. I would, however, as aforestated, set aside the Commission-ordered thirty-day suspension without pay in favor of a

discrimination-eliminating three-day suspension without pay. Finally, I would, like the majority, affirm the part of the circuit court's final order refusing to allow the complainant to cross-appeal to circuit court to recover more-than-incidental emotional damages.

I am authorized to state that Chief Justice MILLER joins in this opinion.