## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Brenda Ellen Egan,**
**Plaintiff Below, Petitioner**

**FILED**

**February 26, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-0226**  (Cabell County 13-C-315)

**Steel of West Virginia, Inc.,**
**and SWVA, Inc.,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner and plaintiff below Brenda Ellen Egan, by counsel Mark A. Atkinson and Paul L. Frampton, Jr., appeals the October 27, 2014, order of the Circuit Court of Cabell County that granted the motion for summary judgment filed by respondents and defendants below SWVA, Inc. and Steel of West Virginia, Inc. on petitioner's claims of hostile environment sex harassment, gender discrimination, and retaliatory discharge.[1] Respondents, by counsel Thomas E. Scarr and Kerry P. Hastings, filed a response. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was hired on August 16, 2011, by Respondent SWVA[2] as a probationary employee. She was initially assigned to the fabrication department. On September 19, 2011, petitioner was moved to the processing department where, among other things, overhead cranes are used to transport thousands of pounds of steel bars. Crane safety was often discussed at pre-shift meetings. Petitioner was trained on and knew the importance of crane safety—including the fact that getting too close to an approaching crane was a safety violation and that walking

---

[1] In a subsequent order entered February 5, 2015, order, upon agreement by the parties, the circuit court dismissed, with prejudice, petitioner's claim that respondents violated the West Virginia Wage Payment and Collection Act. Petitioner does not appeal the circuit court's dismissal of his wage payment claim.

[2] Respondent Steel of West Virginia, Inc. is a holding company that never employed or discharged petitioner. The circuit court dismissed Steel of West Virginia as a defendant to which petitioner did not object. Consequently, only SWVA remains as a respondent in this appeal.

1

underneath a loaded crane was considered a *serious* safety violation.

On October 3, 2011, Carrie Sparks, the union's grievance representative, asked petitioner how she was doing;[3] petitioner responded that everything was fine. After Sparks subsequently learned from other employees that petitioner considered herself a religious person and was offended by profanity, Sparks apologized to petitioner because she had previously used profanity in her presence. Petitioner advised Sparks that she was "not offended." Sparks also indicated that she had heard rumors of sexual harassment involving petitioner by a co-worker and asked petitioner if she was okay. According to Sparks, petitioner told Sparks that she was "old enough to be their mother. I just chastise them and go on. I can handle it. I'm okay."

Prior to her shift on October 4, 2011, petitioner spoke with her supervisor, Jonathon Newman, about her conversation with Sparks. She asked Newman to tell her co-workers that she was not a "rat"[4] and did not initiate the conversation with Sparks. During that same conversation, petitioner also told Newman that she had been sexually harassed; specifically, she told Newman that one of her co-workers had made a comment about masturbation being in the Bible. Petitioner also mentioned the name of another co-worker but did not offer any specific information about his conduct. Petitioner told Newman that she wanted the sexual comments to stop. Newman responded that he was glad that petitioner told him and that he would take care of it; in fact, later that morning, he and petitioner spoke with two groups of petitioner's co-workers about their conduct. Petitioner testified that, thereafter, the inappropriate conduct ceased and no further inappropriate language or behavior occurred.

On October 15, 2011, Newman directed petitioner to help co-worker Greg Hunter on a gag machine known as "the goose." According to Newman, petitioner did not do as she was directed; Newman testified that, instead, petitioner stood around, picked up garbage, and did "other stuff." Newman also testified that, either that night or the night before, petitioner was observed walking directly under a loaded crane to get a tool. According to Newman, "[t]here was a load on. The mag was headed north, and she set a wrench down and was walking away, turned right back around, walked towards it, underneath it, grabbed her wrench, and then came back." At the end of her shift on October 15, Newman terminated petitioner from employment because she failed to do the job he directed her to do that night and for violating crane safety rules.[5]

---

[3] Sparks routinely checked on probationary employees as part of her union duties even though they were not union members due to their probationary status.

[4] The evidence showed that petitioner was told by a union official that there were two union rules: never trust management and never "rat out" a union member to management. Petitioner testified that she took these rules seriously.

[5] Newman evaluated petitioner not long after she arrived in the processing department on September 23, 2011, as was respondent's policy regarding probationary employees. Petitioner received average to above-average marks on this evaluation. Another evaluation conducted earlier than this one (when petitioner worked in the fabrication department), but signed-off on not long before petitioner's termination, was also positive. According to Newman and several of (continued . . .)

Additionally, the evidence revealed that, on four or five occasions, Newman observed petitioner getting too close to a loaded crane; that Newman counseled her about avoiding loaded cranes; and that a crane operator also counseled petitioner about her failure to pay attention to the cranes. Newman testified that "[s]afety is a big issue[;]" that, although both are safety violations, walking under a crane is a much more serious offense than walking near a moving crane; and that a probationary employee can be terminated for violating crane safety rules.

Following her termination, petitioner complained to representatives in respondent's Human Resources Department about her termination and, for the first time, told them that she had been sexually harassed at work. Specifically, petitioner reported the use of profanity; that a co-worker sang about vaginas; that a co-worker made a comment that "seaman like it in the rear;" that one of her co-workers made a masturbation gesture; that a co-worker explained to her what the "F" word stood for; and that a piece of machinery in the processing department had the words "pelvis pounder" written on it.[6] The evidence revealed, however, that with the exception of two comments that were made to her by the same co-worker, she generally overheard the remaining remarks in the break room. Petitioner also testified that after a co-worker said something about "blow-jobs," he apologized and was a "perfect gentleman" afterwards. Petitioner conceded that some of her co-workers used profanity "in all walks of life;" that it had nothing to do with her gender; that she has no reason to believe her co-workers talked any differently in her absence; and that women who worked on her shift also used bad language.

With petitioner's knowledge, respondent's Human Resources representative investigated petitioner's claims, which included interviewing co-workers. Two of the workers interviewed were women. None of the workers interviewed substantiated petitioner's claims. To the contrary, they agreed that petitioner was properly discharged based upon her violations of crane safety rules and lack of productivity. Petitioner was unable to identify anyone who could corroborate her version of events when subsequently asked by the investigating Human Resources representative.

Petitioner thereafter filed a complaint in the Circuit Court of Cabell County in which she alleged hostile environment sex harassment (Count 1); wrongful discharge based on gender (Count 2); retaliatory discharge (Count 3); and a violation of the West Virginia Wage Payment and Collection Act (Count 4). Discovery ensued and, on July 18, 2014, respondent moved for summary judgment on Counts 1-3. On October 27, 2015, following a hearing and supplemental briefing at petitioner's request, the circuit court granted respondent's motion. The wage payment claim (Count 4) was thereafter settled and the claim dismissed; it is not presently at issue. Petitioner now appeals the summary judgment rulings as to her claims of hostile environment sex harassment (Count 1) and retaliatory discharge (Count 3). Petitioner did not oppose the summary judgment motion on the gender discrimination claim.

---

petitioner's co-workers, petitioner's work performance declined following these evaluations.

[6] According to petitioner, she showed Newman the "pelvis pounder" sign as she proceeded to scrape it off of the equipment; that the words reappeared several times thereafter; and that she scraped them off each time. Eventually, the words did not appear again.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (stating that "assessing a prima facie case in a . . . discrimination claim is a question of law over which we have plenary review."). We have also stated that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards in mind, we proceed to address the issues raised in this appeal.

In her complaint, petitioner alleged that respondent violated the West Virginia Human Rights Act ("the Act") by terminating her employment in retaliation for "report[ing] and oppos[ing] practices of [respondent]" that are forbidden by the Act, West Virginia Code, § 5-11-9(7) (stating, in pertinent part, that "[i]t shall be an unlawful discriminatory practice . . . [f]or any . . . employer . . . to: (C) [e]ngage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article . . . .").

This Court has described the elements of a retaliatory discharge claim as follows:

> "'"In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, *W.Va. Code,* 5-11-1, *et seq.,* as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged[7] and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986).' Syl. pt. 1, *Brammer v. Human Rights Commission,* 183 W.Va. 108, 394 S.E.2d 340 (1990)." Syllabus Point 10, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995).

Syl. Pt. 6, *Conrad v. ARA Szabo*, 198 W.Va. 362, 480 S.E.2d 801 (1996). (Emphasis added).

In her first assignment of error, petitioner argues that she established a prima facie case of retaliatory discharge and that the circuit court erred in granting respondent's motion for summary judgment on this issue. Petitioner contends that the evidence showed that she engaged in protected activity by informing her supervisor, on "multiple occasions," that she was being sexually harassed and that, by so informing her supervisor, respondent was placed on notice of such activity. Petitioner argues that the evidence further showed that she was terminated from her employment shortly after complaining to her supervisor about the sexual harassment such that a retaliatory motive can be inferred. We reject petitioner's argument and find no error.

With regard to "protected activity," this Court has held that

---

[7] Respondent does not dispute that petitioner was terminated from her employment.

4

"[p]rotected activity" under the West Virginia Human Rights Act includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act. This standard has both an objective and a subjective element. The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible. Further, the view must be honestly held and be more than a cover for troublemaking. Thus, even if there was no actionable sexual harassment, the plaintiff could still have been engaged in a protected activity if she complained about being sexually harassed.

*Conrad*, 198 W.Va. at 367, 480 S.E.2d at 806, syl. pt. 7.

Based upon the evidence presented, it is clear that petitioner cannot satisfy either the subjective or objective elements required to establish that she engaged in a protected activity within the meaning of the Act and that respondent was aware of the same. *See Id.* Approximately ten days before she was terminated, petitioner informed Newman, her supervisor, of one incident in which a co-worker made a comment that masturbation could be found in the Bible. Petitioner admitted that the co-worker made similar inappropriate comments to others. Although petitioner also mentioned another co-worker's name during her conversation with Newman, she did not accuse him of any specific misconduct. Petitioner testified that after she and Newman confronted the workers about their conduct, the inappropriate behavior ceased.[8]

Furthermore, when Carrie Sparks, the union representative, apologized for using profanity in petitioner's presence, petitioner assured her that she was "not offended" and, further, when Sparks asked petitioner about the alleged sexual harassment, petitioner told her that she was "old enough to be their mother," that she could "handle it[,]" and that she was "okay." Importantly, petitioner elected not to inform either her supervisor or a Human Resources representative about the other alleged incidents of sexual harassment until *after* she was terminated for breaching safety rules and performing her work unsatisfactorily.

Moreover, petitioner failed to establish an inference of a retaliatory motive for her discharge. Petitioner was a probationary employee whose probationary period was coming to an end; a decision by her supervisor about her future employment status was soon to be made.[9] The evidence revealed that, during her probationary period, petitioner repeatedly violated crane safety rules by getting too close to moving cranes and, more egregiously, walking directly beneath cranes loaded with heavy steel bars. The evidence showed that these safety violations,

---

[8] Furthermore, petitioner argues that Newman was aware that the words "pelvis pounder" were written on a piece of equipment and that he saw her scrape them off, thus, signaling that she found the words to be offensive. Petitioner argues that this constitutes her "first report" of a hostile work environment to her supervisor.

[9] Petitioner did not dispute that the purpose of probationary employment is to determine whether an employee can demonstrate that he or she will be a valuable member of the team, in terms of safety and productivity.

coupled with petitioner's lack of productivity, led Newman to terminate her employment. Given these facts, petitioner failed to prove a retaliatory motive for her discharge. Because petitioner failed to prove all of the elements of a prima facie case of retaliatory discharge, we conclude that the circuit court did not err in granting summary judgment in favor of respondent on this issue.

In her second assignment of error, petitioner argues that she established a prima facie case of sexual harassment based upon a hostile work environment and that the circuit court erred in granting summary judgment in favor of respondent on this issue.

> "To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va.Code § 5-11-1, *et seq.,* based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Syllabus Point 5, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995).

*Conrad,* 198 W.Va. at 366, 480 S.E.2d at 805, syl. pt. 3. Once the four elements set forth above have been satisfied, a plaintiff "'has proven a *prima facie* case of sexual harassment, which must then be presented to the jury.'" Syl. Pt. 8, in part, *CSX Transp., Inc. v. Smith*, 229 W.Va. 316, 729 S.E.2d 151 (2012) (quoting Syl. Pt. 5, in part, *Akers v. Cabell Huntington Hosp., Inc.*, 215 W.Va. 346, 599 S.E.2d 769 (2004).). This Court has explained that

> [i]n considering whether petitioner has made her prima facie case we are mindful that "workplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' *Harrisf v. Forklift Systems, Inc.,* 510 U.S. 17,] 25 [1993], 114 S.Ct. [367], 372 [126 L.Ed.2d 295] (Ginsburg, J., concurring)." *Willis v. Wal–Mart Stores, Inc.,* 202 W.Va. 413, 416, 504 S.E.2d 648, 651 (1998) (quoting *Oncale v. Sundowner Offshore Svcs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998)).

*Frame v. JPMorgan Chase*, No. 12-0967, 2013 WL 3184755, at \*2 (W.Va. June 24, 2013) (memorandum decision).

Petitioner argues that she proved all of the elements necessary to establish a prima facie case of sexual harassment.[10] However, based upon our review of the record, we conclude that the

---

[10] Respondent concedes that the alleged conduct was unwelcome, which is the first element of establishing a claim of sexual harassment. *See Conrad,* 198 W.Va. at 366, 480 S.E.2d at 805, syl. pt. 3.

circuit court did not err in granting summary judgment in favor of respondent on this issue. First, petitioner failed to show that the conduct about which she complains was based on her gender. To the contrary, the evidence showed that, although two inappropriate comments were made to petitioner by a certain co-worker—one about masturbation and one about the meaning of the "F" word—petitioner testified that this co-worker said similar inappropriate things to other people. With regard to the general use of profanity in the workplace, petitioner testified that some of her co-workers (including women) used such language "in all walks of life;" that it had nothing to do with her gender; and that she has no reason to believe that they talked any differently when she was not there. The evidence further revealed that only two of the offensive remarks were directed at her; rather, the majority of the comments were generally overheard in the break room or elsewhere at work. Given this evidence, we find that the circuit court did not err in concluding that the alleged inappropriate conduct by petitioner's co-workers was not based upon petitioner's gender.

With regard to whether the alleged misconduct was sufficiently severe or pervasive to alter petitioner's conditions of employment or create a hostile work environment, we find that the circuit court did not err in concluding that petitioner failed to satisfy this element of her sexual harassment claim. Although petitioner told her supervisor that she wanted the sexual remarks to stop, the evidence also revealed that she told the union representative that she was "not offended" by the use of profanity and that she could "handle" the alleged inappropriate conduct by co-workers. According to petitioner, when such conduct occurred, she would simply scold her co-workers and continue with her work because she was "old enough to be their mother." Furthermore, petitioner mentioned only one specific inappropriate remark to her supervisor and did not complain to Human Resources representatives until after she was discharged for violating crane safety rules and lack of productivity. Given this evidence, petitioner failed to prove that her co-workers' conduct was so pervasive or severe so as to alter her conditions of employment or that the "the purpose or effect" of her co-worker's conduct "unreasonably interfer[ed] with [her] work performance or create[d] an intimidating, hostile, or offensive working environment." Syl. Pt. 7, in part, *Hanlon v. Chambers*, 195 W.Va. 99, 102, 464 S.E.2d 741, 744 (1995). [11]

The final element of proving a prima facie case of sexual harassment requires that the alleged inappropriate conduct be imputable on some factual basis to the employer. *See Conrad*, 198 W.Va. at 366, 480 S.E.2d at 805, syl. pt. 3. "When the source of the harassment is a person's co-workers and does not include management personnel, the employer's liability is determined by its knowledge of the offending conduct, the effectiveness of its remedial procedures, and the adequacy of its response." *Colgan Air, Inc. v. W.Va. Human Rights Comm'n*, 221 W.Va. 588,

---

[11] Petitioner claims that her co-workers treated her differently after she and Newman spoke to them about their conduct. She contends that, on the night she was discharged, co-worker Greg Hunter prevented her from working on the "goose" as she was assigned to do. Although petitioner argues that Hunter's conduct was retaliatory, petitioner's own testimony reveals that, in fact, Hunter was angry with her because petitioner was assigned to "the goose" instead of him. Before Newman terminated her for, among other things, "standing around" and not doing what she was told to do (i.e., work on "the goose"), petitioner never mentioned Hunter's alleged conduct.

7

595, 656 S.E.2d 33, 40 (2007). *See* Syl. Pt. 8, *Ford Motor Credit Co. v. W.Va. Human Rights Comm'n*, 225 W.Va. 766, 696 S.E.2d 282 (2010) (holding that "[a]n employer will not be liable for discriminatory acts of its employee unless he knew or reasonably should have known of the discriminatory acts and did nothing to correct them, or expressly or impliedly authorized or ratified them") (citation omitted). The facts of this case involve the alleged harassment of petitioner by other employees; petitioner does not aver that any member of management (including her supervisor, Jonathon Newman) acted inappropriately.

Respondent presented evidence that that it had a strict anti-harassment policy and that petitioner was aware that respondent encouraged employees to report all perceived incidents of harassment or discrimination and prohibited retaliation against anyone who reports the same. After petitioner informed Newman about the masturbation comments made by one of her co-workers and advised Newman that she wanted the inappropriate sexual remarks and conduct to stop, Newman promptly spoke with petitioner's co-workers, at which time the objectionable behavior ceased. Petitioner admitted that she did not inform respondent's Human Resources representatives about the majority of the alleged misconduct herein described until after she was terminated from her employment. Other than the "masturbation" comment and the words "pelvis pounder" written on a machine, petitioner does not allege that Newman or any other member of management was aware of the allegedly offensive behavior. This evidence is undisputed. Thus, petitioner failed to show that the alleged inappropriate conduct was imputable on some factual basis to respondent.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 26, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

8