337 S.E.2d 913

**Edward E. PRICE**

v.

**BOONE COUNTY AMBULANCE AUTHORITY, et al**

**No. CC954.**

Supreme Court of Appeals of West Virginia.

Dec. 6, 1985.

Mike Kelly, Mary Catherine Buchmelter, Legal Aid Society of Chas., Charleston, for appellant.

Francis M. Curnutte, III, Madison, for appellees.

BROTHERTON, Justice:

This case is before the Court on two questions certified by the Circuit Court of Boone County. That court asks, in essence, whether or not a plaintiff may sue to enforce the substantive provisions of the West Virginia Human Rights Act, chapter 5, article 11 of the Code, without complying with the Act's procedural requirements. For the reasons set out below, we affirm the circuit court's ruling that the plaintiff has a right to sue in circuit court, as an alternative to filing a complaint with the Human Rights Commission.

The defendant in this case, the Boone County Ambulance Authority ("the Authority"), is a public corporation created by the Boone County Commission pursuant to

W.Va. Code § 7–15–4 (1975).[1] The petitioner, Edward-Price, was a part-time employee of the Authority prior to a reorganization in which all part-time positions were eliminated. In the reorganization, the Authority created several new full-time positions, and Price applied for a full-time job as an ambulance driver. He was not hired.

Approximately 117 days later, Price filed suit in the Circuit Court of Boone County, alleging that the Authority refused to hire him because he is black. This, he alleged, constituted a violation of the West Virginia Human Rights Act, specifically Code § 5–11–9(a).[2] He did not file a complaint with the West Virginia Human Rights Commission. The Authority moved to dismiss the complaint because Price had not filed a complaint with the Human Rights Commission within ninety days of the alleged act of discrimination, as required by Code § 5–11–10 (1979). The circuit court denied the Authority's motion, and in recognition of the importance of the jurisdictional issue posed, certified the following two questions to this Court:

1. Whether a person alleging to be aggrieved by an unlawful discriminatory act as prohibited by the West Virginia Human Rights Act must, as a matter of law, file a complaint with the West Virginia Human Rights Commission within ninety days after the alleged act of discrimination or be forever barred from prosecuting in the courts of this State any claim arising under the Act.

2. Whether a person alleging to be aggrieved by an unlawful discriminatory act as prohibited by the West Virginia Human Rights Act has, as an alternative remedy to the administrative procedures

set forth in the Act, the right to directly initiate a civil action under the Act in the circuit court of the county wherein the defendant resides or transacts business without the necessity of first filing a complaint with the Human Rights Commission, provided that he or she does so before the expiration of the statute of limitations on the claim.

The circuit court answered the first question in the negative and the second in the affirmative, concluding that Price should be allowed to sue in the circuit court for violations of the Human Rights Act even though he did not follow the Act's procedural requirements.

The controversy centers around the interpretation of W.Va. Code § 5–11–13 (Supp.1985). Each side reads this section to support its own position. Section 5–11–13 provides:

(a) Except as provided in subsection (b), nothing contained in this article shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this State relating to discrimination because of race, religion, color, national origin, ancestry, sex, age, blindness or handicap, *but as to acts declared unlawful by section nine [§ 5–11–9] of this article the procedure herein provided shall, when invoked, be exclusive* and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subse-

---

**1.** We note that because the defendant is an arm of municipal government, the plaintiff might also have had an action under 42 U.S.C. § 1983 (1982), based on his right to be free from racial discrimination granted by the fourteenth amendment of the United States Constitution. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Turpin v. Mailet,* 591 F.2d 426 (2d Cir.1979). The question before us, however, is whether his state law cause of action may be sustained.

**2.** W.Va. Code § 5–11–9 (Supp.1985) provides:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the State of West Virginia or its agencies or political subdivisions:

(a) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is able and competent to perform the services required....

quently resort to the procedure herein. . . .

(emphasis added). The italicized language permits no clear conclusion. On the one hand, it appears to say that the Act's procedure is the exclusive means for vindicating rights declared unlawful by § 5–11–9. On the other hand, the insertion of "when invoked" indicates that the exclusivity provision applies only when an injured party has initiated administrative action. Because the statute is ambiguous, we must construe it in light of its legislative intent. *See, e.g., State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 317, 305 S.E.2d 268, 273 (1983).

The overall purpose of the Human Rights Act was expressed by the Legislature in its declaration of policy: "[T]o provide all ... citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental, and financing of housing accommodations or real property." W.Va. Code § 5–11–2 (Supp.1985). The purpose of creating an administrative enforcement mechanism was to circumvent civil or criminal suits for civil rights violations, which had proven expensive and ineffective, and to utilize instead administrative investigation, conciliation, and enforcement. *See generally* Note, *The Right to Equal Treatment: Administrative Enforcement of Antidiscrimination Legislation,* 73 Harv.L.Rev. 526, 526–28, 573–74 (1961). If this route proved too slow, the Legislature provided, in 1983 amendments, a mechanism for transferring a case to circuit court for resolution. *See* W.Va. Code § 5–11–13(b) (Supp.1985).[3] This provision for transfer, along with the express savings clause,[4] demonstrates that the Legislature intended some combination of administrative and ju-

dicial enforcement of the rights granted by the Human Rights Act.[5] It may reasonably be concluded that although the Legislature created the Human Rights Commission as the primary enforcement mechanism for rights created by the Act, it intended to preserve the ability of a complainant to resort to circuit court when either he had an independent right to do so or when the administrative process proved ineffective.

■ This conclusion is counter to the general rule of statutory construction that where a new right is created by statute, the remedy provided for its violation is exclusive. *See, e.g., Smith v. Police & Firemen's Retirement & Relief Bd.,* 460 A.2d 997, 1000 (D.C.1983); *Soley v. State Comm'n on Human Relations,* 277 Md. 521, 526, 356 A.2d 254, 257–58 (1976); *Pompey v. General Motors, Inc.,* 385 Mich. 537, 552–53, 189 N.W.2d 243, 251 (1971); *Lynch v. Merchant's Nat'l Bank,* 22 W.Va. 554, 557 (1883). Courts have recognized an exception to this rule, however, where there is no adequate administrative remedy. *See, e.g., Poe v. Baltimore City,* 241 Md. 303, 308–09, 216 A.2d 707, 709–10 (1966). This Court, in *Allen v. State Human Rights Comm'n,* 174 W.Va. 139, 324 S.E.2d 99 (1984), recognized that the administrative process established by our Human Rights Act was not achieving its intended purpose, and in addition noted that few plaintiffs were taking advantage of their right to transfer their cases to circuit court for resolution. *See id.,* 174 W.Va. at 145–146 n. 4, 324 S.E.2d at 105–06 n. 4, 114–15. It could, therefore, be concluded that the administrative remedies and the mechanism for transfer to circuit court provided by the statute are at this time inadequate for enforcing the fundamental civil rights grant-

**3.** Section 5–11–13(b) requires the Human Rights Commission to notify a complainant that he has a right to sue in circuit court in certain situations—notably if there has been no hearing within 180 days of filing or no determination within a year. A complainant who has received such a notice may file suit at any time prior to the expiration of the statute of limitations on his claim, or 90 days after he is given notice, whichever is later.

**4.** W.Va. Code § 5–11–13(a) (Supp.1985) (preserving existing and later-adopted state and local laws relating to discrimination).

**5.** Similarly, this Court in prior decisions has recognized that a case involving a violation of civil rights, but seeking primarily money damages, must be brought in circuit court, where trial by jury is available. *State Human Rights Comm'n v. Pearlman Realty Agency,* 161 W.Va. 1, 5–6, 239 S.E.2d 145, 148 (1977).

ed by our Human Rights Act. In light of this fact and of the legislative purpose and intent as interpreted above, we conclude that § 5–11–13(a) should be construed to give those aggrieved by human rights violations the option to proceed in circuit court, as an alternative to initiating administrative action.[6] These two avenues are, of course, mutually exclusive, as § 5–11–13(a) makes clear.[7]

█  Moreover, because our conclusion is based on legislative intent, and because the Legislature made express provision for damages to be awarded in human rights cases transferred to circuit court, the remedies available in this action are those set out in W.Va. Code § 5–11–13(c) (Supp. 1985).

We affirm the rulings of the circuit court on the questions certified, and remand the case for proceedings consistent with this opinion.

Certified questions answered.

Case remanded.

---

**6.** Our holding is in accord with that of the Supreme Court of Michigan in *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971), which held that a plaintiff could bring an action in state court for violation of that state's human rights act. The court in *Pompey* concluded that the state legislature had granted substantive rights against discrimination in a 1955 civil rights statute, prior to creating an administrative procedure for resolving civil rights disputes. 385 Mich. 537, 189 N.W.2d at 250, 253. In that situation, the Michigan court held that a provision similar to W.Va. Code 5–11–13 operated to preserve the pre-existing state

cause of action. 385 Mich. at 559, 189 N.W.2d at 254–55.

**7.** As for whether this action was timely, the complaint in this case was filed 117 days after the allegedly discriminatory act, and would, therefore, fall within even a one-year statute of limitations. We note with approval, however, the opinion of the Court of Appeals for the Fourth Circuit in *McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278 (4th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981), which applied the two-year limitations period for personal injuries to a civil rights claim. *See* W.Va. Code § 55–2–12 (1981).