426 S.E.2d 344

Marilyn Rae HARMON, Plaintiff
Below, Appellee,

v.

James HIGGINS, dba Capital City Beauty
College, aka Weirton Beauty College,
Defendant Below, Appellant.

No. 20478.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 16, 1992.

Andrew A. Raptis, Charleston, for appellee.

Andrew S. Nason, Pepper & Nason, Charleston, for appellant.

BROTHERTON, Justice:

On September 27, 1988, the appellee, Marilyn Rae Harmon, filed a civil suit against her employer, James F. Higgins, in

which she charged him with various torts related to allegations of sexual harassment. A jury subsequently awarded Harmon $11,000 in compensatory damages and $6,000 in punitive damages. Higgins now appeals from the adverse verdict which was returned in the Circuit Court of Kanawha County on March 1, 1991.

Harmon was employed for approximately five years as an instructor at Capital City Beauty College, a/k/a Weirton Beauty College, which is owned by Higgins. On September 30, 1986, the beauty college manager, Margarete Thomas, told Harmon to discharge her teaching duties that day by supervising students who were cutting hair on the clinic floor. Although such an assignment was apparently not unusual, Harmon was upset by this request, and she chose to leave work instead.

At trial, Harmon testified that she quit because an unqualified student was assigned to instruct her class, and she felt she was being demoted from her position as a classroom teacher. Several witnesses testified that Higgins was not present when Harmon was at the beauty college on the morning of September 30, 1986. Higgins testified that he came in at noon. However, Harmon contends that she went to talk to Higgins early that morning, soon after Margarete Thomas' action. She objected to having an unqualified student teach her class and complained to Higgins that this action violated the State's beautician law.

According to Harmon, "I told Mr. Higgins what Margarete was doing. And he said, 'If you don't want to work here and do what she tells you, you do not have to work here.'" Harmon continued: "He just said, 'If you don't want to work here under the circumstances, you don't have to.' And I said, 'I can't work under those circumstances, and I'm not going to work here anymore.' And I asked him for my check." Higgins stated that he did not talk to or even see Harmon that day.

Harmon subsequently filed a civil suit against Higgins, in which she claimed that she was constructively discharged because she refused to give in to Higgins' sexual advances. Harmon states that after she was divorced in 1984, Higgins began asking her out to dinner. She always declined his invitations. However, Harmon did testify that on one weekend, Higgins gave her and her two children a ride to Steubenville, Ohio, where she was going to visit an aunt. They left on Friday and spent Friday night in separate rooms in a small apartment. He dropped them off at her aunt's house on Saturday and picked them up on Sunday afternoon. (Higgins spent the weekend in Weirton, West Virginia.) He then took them shopping and bought toys for the children and clothes for Harmon. Harmon testified: "I assumed that he was just being nice at that time. And then he brought us on home to Charleston, and he never touched me or anything during that time." Harmon states that although she would occasionally call and ask him to give her a ride to work, this was her only out-of-town trip with Higgins, and he made no sexual advances at that time.

However, Harmon alleges that beginning in November, 1985, and on more than one occasion after that, Higgins began to put his hand down her dress and touch her breasts. Although she stopped him each time, Harmon says that she felt that she had to submit to this type of "breast touching" if she wanted to keep her job.

Harmon argues that she has a tort claim against Higgins of the type recognized by this Court in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978). In *Harless*, we explained that "[w]here the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge." *Id.*, 246 S.E.2d at 275. Harmon contends that her claim against Higgins is not a sexual harassment or discrimination suit instituted pursuant to the West Virginia Human Rights Act, but instead is a retaliatory, constructive, or abusive discharge case under *Harless* and its progeny.[1]

---

1. *See also Harless v. First National Bank in Fair-* *mont,* 169 W.Va. 673, 289 S.E.2d 692 (1982).

Higgins maintains that Harmon's allegations fall within the scope of the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.*, and because this Act sets forth public policy and provides statutory remedies, its remedy is exclusive and others cannot be pursued. Thus, Higgins argues that a *Harless*-type tort action was prohibited in this instance. The trial court disagreed with the appellee's position, and refused to instruct the jury on any issues of law under the Human Rights Act. However, the court did instruct the jury on assessing punitive damages, which are allowed in a *Harless*-type case but are not an element of damages under the Human Rights Act, W.Va.Code § 5–11–13(c).

On appeal, Higgins now argues that the trial court erred in failing to find that the West Virginia Human Rights Act preempts other sexual harassment complaints, and that a *Harless*-type tort claim was not available to Harmon in this case. The appellant also contends that Harmon's suit was barred by a statute of limitations because the last alleged incident of sexual harassment occurred more than two years prior to the filing of the action. We agree that Harmon's action was time-barred, and, for the reasons set forth below, we reverse the judgment of the Circuit Court of Kanawha County.

■■■■ From our review of the record, it is clear that the appellee tried this case solely on a *Harless*-type discharge theory which was based on the alleged ongoing sexual harassment, and not on job reassignment. The mere mention of a Human Rights Commission complaint was silenced by the lower court, for reasons which are not apparent from the record. Regardless, it appears to this Court that the appellant does not qualify as an "employer" within the meaning of the West Virginia Human Rights Act. In the Act, an "employer" is defined as "the state, or any political subdivision thereof, and any person employing twelve or more persons within the state...." W.Va.Code § 5–11–3(d) (1990). The appellant indicated in oral argument that Capital City Beauty College does not employ twelve or more persons.

Moreover, we believe that the dispute over whether the appellee should have filed a civil suit in circuit court or filed a complaint with the Human Rights Commission is irrelevant in this instance, because the statute of limitations issue raised by the appellant is dispositive.[2]

The appellant argues that because the jury did not connect Margarete Thomas' actions on September 30, 1986, with the acts allegedly committed by Higgins, the complained of conduct had to have occurred more than two years prior to the filing of the lawsuit. Thus, the suit was barred by the applicable statute of limitations.

In Special Interrogatory #1A, dated March 1, 1991, the jury was asked:

Do you find a connection between the defendant's inappropriate sexual advances and Margarete Thomas assigning Marilyn Harmon to the clinic floor on September 30, 1986 (yes or no)?

The jury responded "no." However, the jury was specifically instructed that:

... you must next find that the actions of Margarete Thomas in directing the

More recently, in syllabus point 4 of *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W.Va. 144, 423 S.E.2d 547 (1992), this Court recognized that "[a] constructive discharge cause of action arises when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer has created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment."

**2.** In syllabus point 1 of *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985), this Court recognized that "[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act." "The remedies available in circuit court for violation of W.Va.Code § 5–11–9 are those set out in W.Va.Code § 5–11–13(c)." *Id.* at syl. pt. 2. In *Price*, the plaintiff alleged a violation of the West Virginia Human Rights Act in a civil suit charging racial discrimination, but he did not file a complaint with the Human Rights Commission. In this case, Harmon did not file a complaint with the Human Rights Commission, nor was her civil suit based on allegations of a violation of the Act.

plaintiff to work on the clinic floor had a relationship and a connection to the conduct of James F. Higgins, which is the conduct complained of by the plaintiff in this case. In other words, in order to find for the plaintiff, you must find that the act of directing Marilyn Rae Harmon to work on the clinic floor had a connection to her complaints of sexual harassment and her complaints of being inappropriately touched by James F. Higgins. If the jury believes that the decision to direct Marilyn Rae Harmon to teach on the clinic floor on September 30, 1986, was a separate decision by Margarete Thomas and if that decision was a reasonable direction by an employer and if you further believe that that decision was made separate and apart from James F. Higgins, then you may find for the defendant and against the plaintiff.

Higgins argues that the general jury verdict was inconsistent with the conclusion reached by the jury in the special interrogatory. Although the jury did find Higgins guilty of sexual harassment, it found no connection between Margarete Thomas' job reassignment on September 30, 1986, and Higgins' pattern of harassment. The jury's conclusion on this point is significant because it affects the determination of when the statute of limitations began to run in this case.

As we noted above, Harmon quit work on September 30, 1986. Harmon did not charge that Higgins touched her or made any kind of sexual advances on September 30, 1986. According to her testimony, the last incident of an alleged touching occurred on September 24, 1986. Harmon did not file suit against Higgins until more than two years later, on September 27, 1988.

West Virginia Code § 55–2–12 provides that the statute of limitations on suits seeking damages for personal injuries is two years.[3] In tort actions, "[t]he statute of limitations ordinarily begins to run when the right to bring an action for personal injury accrues which is when the injury is inflicted." Syl. pt. 1, *Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986).

In this case, the complained of injury occurred when Harmon quit work on September 30, 1986, thereby giving rise to her claim of constructive discharge. Although she testified that she quit because she was temporarily reassigned, in fact, Harmon's discharge theory was clearly based on sexual harassment. Because the jury found no connection between the September 30, 1986, job reassignment and Higgins' pattern of sexual harassment, the date of Harmon's last offensive contact with Higgins was September 24, 1986. We conclude that in cases involving allegations of discharge from employment related to claims of sexual harassment or discrimination, a two-year statute of limitations for personal injuries begins to run on the date of the last offensive contact, or threat of offensive contact, which precipitated the termination of employment. Thus, the statute of limitations ran out on Harmon's tort claim against Higgins before she filed suit on September 27, 1988.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is reversed.

Reversed.

---

**3.** In footnote 7 of *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913, 916 (1985), we noted with approval the Fourth Circuit Court of Appeals' opinion in *McCausland v. Mason County Board of Education*, 649 F.2d 278 (4th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981), which applied the two-year limitations period for personal injuries to a civil rights claim. In *Sharp v. Southern West Virginia Regional Health Council*, 178 W.Va. 196, 358 S.E.2d 455, 458 (1987), we recognized that the "clear intent" of W.Va.Code § 5–11–13(b) was to give the complainant who transfers his case from the Human Rights Commission to circuit court "the full benefit of whatever statute of limitations would have been applicable had suit been filed in the circuit court in the first instance. The plaintiff who chooses direct action in the circuit court is entitled to no less."