**Ntuma SESAY, Plaintiff,**

v.

**MONTGOMERY WARD & COMPANY, INC., Defendant.**

Civil Action No. 2:95–0890.

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 9, 1996.

Andrew A. Raptis, Jr., Charleston, WV, for plaintiff.

Albert F. Sebok, Jackson & Kelly, Charleston, WV, William J. Vincent, DeWitt, Balke & Vincent, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the motion for summary judgment filed by Defendant Montgomery Ward and Company, Incorporated (Montgomery Ward). After careful consideration, the Court GRANTS in part and DENIES in part Montgomery Ward's motion.

### I. FACTUAL BACKGROUND

Plaintiff Ntuma Sesay is a 36 year old African–American female born in Sierra Leone, West Africa. She has lived in the United States since 1982. On January 21, 1992 Sesay applied for a sales associate position at Montgomery Ward in Charleston, West Virginia. Following a personal interview, and despite the fact she wanted full-time employment, Sesay accepted a position as a part-time noncommissioned sales associate effective February 14, 1992.

Montgomery Ward hired George King, a 23 year old white male, the same day in the same department and in the same capacity. King was put on full-time status March 29, 1992. Later King was transferred to another department, creating a full-time vacancy in Sesay's department.

Sesay worked well with her first supervisor, Jim Kinzer, and she felt he treated her fairly. Kinzer left Montgomery Ward in February 1993, however. His position was filled immediately by Todd Kozee.

At some point prior to February 16, 1993, the date Sesay took a six week leave of absence from Montgomery Ward to revisit Sierra Leone, she applied to Kozee for the full-time position created by King's transfer. Kozee informed Sesay she could not have the job because (1) he had trouble understanding her diction; and (2) she was not flexible enough.

On August 17, 1992 Montgomery Ward hired Matt Sigman, a 19 year old white male, as a part-time sales associate in Sesay's department. He was elevated to full-time status on May 22, 1993, filling the vacancy created by King's transfer. Sesay asserts she was more qualified for the position because she had more seniority than Sigman.

On July 24, 1993 Sigman left Montgomery Ward's employ for another job. Sesay asked Kozee for Sigman's full-time slot that same day. Kozee refused, again citing Sesay's inflexibility and his difficulty understanding her diction. Sesay never again requested full-time employment. On September 15, 1993, Sigman returned to Montgomery Ward and to his previous full-time slot.

On December 16, 1993 Sesay filed a charge with the West Virginia Human Rights Commission alleging race, sex and national origin discrimination.[1] Sesay alleged, *inter alia,*

---

**1.** Sesay suggested in the charge that she was  denied full-time employment in March and Sep-

Kozee had "a practice of making rude and disparaging remarks to female employees." Ex. 14, Def.'s mot. for summ. jgt. The Court has reviewed Sesay's deposition testimony in detail. It is littered with a number of instances of inappropriate remarks, "smoking gun" comments and conduct by Kozee.

Sesay was promoted to full-time status on January 30, 1994. Less than one month later, Sesay again took an extended vacation to visit her ill father in Sierra Leone. She was absent for three months. She was granted this leave, although it was not Montgomery Ward practice to approve lengthy departures from work.

Sesay returned to work on May 22, 1994 and worked five hours that day and eight hours on May 24. She worked nine hours on May 27 and submitted the following letter the same day:

> I, Ntuma B. Sesay, have decided to terminate my employment with Montgomery Ward Company effective June 10, 1994 for personal reasons.[2] *Thank you for giving me the opportunity to work for your company.*

Ex. 17, Def's mot. for summ. jgt. (emphasis and footnote added). Sesay testified it was her idea to write the letter and no one forced her to do so. She went so far as to admit no one at Montgomery Ward encouraged her to resign. Sesay's last day of work was June 8, 1994.

On May 3, 1995 Sesay withdrew her December 16, 1993 charge of discrimination pending before the Commission. The Commission entered a closing order dated May 23, 1995 dismissing the charge. On May 23, 1995 the Commission sent Sesay a Notice of Right to Sue. A return receipt proffered by Montgomery Ward indicates Sesay received the notice on May 25, 1995.[3]

Sesay filed the instant complaint on August 25, 1995 alleging claims under the West Virginia Human Rights Act (WVHRA), *West Virginia Code* §§ 5–11–1 *et seq.*, for race, gender and national origin discrimination based on (1) a failure to promote her to full-time status; (2) creation of a hostile work environment; and (3) constructive discharge.

On Sesay's first claim, Montgomery Ward asserts any action seeking relief for the two discrete failures to promote are barred by the applicable statutes of limitation. Regarding the hostile environment claim, Montgomery Ward asserts Sesay has failed to adduce evidence (1) Kozee's alleged acts of harassment were motivated by Sesay's race, sex or national origin; or (2) the acts were sufficiently severe or pervasive so as to alter the conditions of her employment. On the constructive discharge claim, Montgomery Ward argues Sesay was not exposed to the required intolerable working conditions.

## II. THE LAW

### A. The Summary Judgment Standard:

Our Court of Appeals has often stated the accepted standard governing the disposition of a motion for summary judgment as follows:

> A moving party is entitled to summary judgment 'if the pleading[s], depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).
>
> A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'

---

tember 1993 and also lists the "[d]ate of incident" as September 28, 1993. This is in direct conflict with Sesay's sworn deposition testimony which pegs the denials at on or about February 16 and July 24 of 1993. The Court treats Sesay's deposition testimony as controlling, given its manifest clarity.

**2.** Sesay claims the referenced "personal reasons" related to Kozee. She asserts when she returned from her second trip to Sierra Leone

that Kozee was not talking to her and it made her "feel like ... nothing." Ex. 1, Def.'s mot. for summ. jgt. at 12. She said this silence made her feel "depressed" and like "he didn't need me in the job...." *Id.* at 12–13.

**3.** The return receipt is not signed by Sesay. Nevertheless, she does not dispute she received the Notice on May 25.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.* *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va. 1996). Accordingly, it is through this analytical prism the Court evaluates Montgomery Ward's motion.

**B. Failure to Promote to Full–Time Status:**

■ In pursuing a claim under the WVHRA, an aggrieved party has two options. As stated in Syllabus Point 1 of *Price v. Boone County Ambulance Authority,* 175 W.Va. 676, 676, 337 S.E.2d 913, 913 (1985),

[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the [WVHRA].

*Id.; Harmon v. Higgins,* 188 W.Va. 709, 711, 426 S.E.2d 344, 346 n. 2 (1992); syl. pt. 3, *FMC Corp. v. West Virginia Human Rights Comm'n,* 184 W.Va. 712, 713, 403 S.E.2d 729, 730 (1991); *Sharp v. Southern West Virginia Regional Health Council,* 178 W.Va. 196, 198,

358 S.E.2d 455, 457 (1987); *Cornell v. General Elec. Plastics,* 853 F.Supp. 221, 224 (S.D.W.Va.1994).

Depending on the party's choice, there are differing time limitations. If a party chooses to proceed before the Commission, she must comply with the limitation prescribed by *West Virginia Code* § 5–11–10:

Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice shall make, sign and file with the commission a verified complaint.... *Any complaint filed pursuant to this article must be filed within one hundred eighty days after the alleged act of discrimination.*

W.Va.Code § 5–11–10 (1987) (emphasis added), *amended by* W.Va.Code § 5–11–10 (1994).[4]

In order to transfer the case from the Commission to the circuit court, an aggrieved party must further comply with § 5–11–13(b):

Notwithstanding the provisions of subsection (a) of this section, a complainant may institute an action against a respondent in the county wherein the respondent resides or transacts business at any time *within ninety days after the complainant is given notice of a right to sue pursuant to this subsection (b) or, if the statute of limitations on the claim has not expired at the end of such ninety-day period, then at any time during which such statute of limitations has not expired.*

*Id.* (emphasis added).

■ The statute of limitations on a claim under the WVHRA is two years. *Wilfong v. Chenoweth Ford, Inc.,* 192 W.Va. 207, 213, 451 S.E.2d 773, 779 (1994); *Harmon,* 188 W.Va. at 712, 426 S.E.2d at 347 n. 3; *McCourt v. Oneida Coal Co., Inc.,* 188 W.Va. 647, 651, 425 S.E.2d 602, 606 (1992); *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 230 (4th Cir.1993); *Roe v. County Comm'n of Monongalia County,* 926 F.Supp. 74, 78 (N.D.W.Va.1996); *Cooper v. Norfolk & W.*

4. The 1994 amendment changed the 180 day period to a 365 day period. *See* 1994 W.Va.Acts 1447. The change became effective on or about June 12, 1994. Sesay does not dispute the 180 day period applies here.

*Ry. Co.,* 870 F.Supp. 1410 (S.D.W.Va.1994); *Cornell,* 853 F.Supp. at 225 n. 9.

 The ninety day time limitation contained in § 5–11–13(b) "commences upon receipt by the complainant of the written notice of the right to sue." Syl. pt., *Mason v. City of Martinsburg,* 181 W.Va. 84, 84, 380 S.E.2d 436, 436 (1989). Both the 180 day and two year periods begin to run from the employer's unequivocal notification to the employee of the adverse employment decision. *See* syl. pt. 1, *McCourt,* 188 W.Va. at 648, 425 S.E.2d at 603; syl. pt. 2, *Independent Fire Co. No. 1 v. West Virginia Human Rights Comm'n,* 180 W.Va. 406, 406, 376 S.E.2d 612, 612 (1988) (citing with approval *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

While Sesay alleged in her complaint she continually requested full-time employment, her deposition testimony is crystal clear. She requested and was refused without equivocation full-time employment on two discrete occasions—February 16 and July 24 of 1993. Both claims are time barred.

First, concerning the February 16, 1993 refusal, Sesay failed to file her charge of discrimination with the Commission within 180 days. To the extent it may be relevant, she also failed to commence this portion of her civil action within two years, having filed her complaint in this case on August 25, 1995.

Regarding the July 24, 1993 refusal, Sesay's charge was filed seasonally with the Commission. The Commission, however, issued a right to sue letter, which was received by Sesay on May 25, 1995. Again, Sesay filed this action August 25, 1995—92 days after receipt of the right to sue letter and more than two years after the unequivocal denial of her July 24, 1993 final request for a full-time position.[5]

Accordingly, Montgomery Ward is entitled to summary judgment on this portion of Sesay's complaint.

### C. Hostile Environment and Constructive Discharge Claims:

The Court concludes genuine issues of material fact are extant on the hostile environment and constructive discharge claims. Accordingly, these claims will proceed to trial.

---

5. In making this determination, the Court is cognizant of Sesay's statement in her affidavit attached to her response brief: "I do not believe it is fair to say that I only requested full time employment twice. Todd Kozee knew every day that I wanted full time employment but due to his prejudice against my race, sex and national origin, he refused me." Ex. 1, Pl.'s resp. br. Sesay does not advance a continuing violation theory, nor does such an argument appear appropriate. Further, she admits she received Kozee's unequivocal denial of full-time employment on the dates set forth above. Her conclusory speculations in the affidavit are thus of no avail.